United States District Court
Southern District of Texas
**ENTERED**
October 26, 2015
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT LEE DUNN, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-0979 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent*. | § | |

### MEMORANDUM OPINION AND ORDER

State inmate Robert Lee Dunn filed a *pro se* section 2254 habeas petition challenging his 2012 conviction and fifty-year sentence for sexual assault.  Respondent filed a motion for summary judgment on September 10, 2015, and served petitioner a copy that same date at his address of record.  (Docket Entry No. 16).  Despite expiration of a reasonable period of time in excess of forty-five days, petitioner has failed to respond, or request additional time to respond, to the motion for summary judgment, and the motion is uncontested.

Based on consideration of the pleadings, the motion, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

The jury found petitioner guilty of sexual assault.  Following petitioner's plea of "true" to two enhancement paragraphs, the trial court sentenced him to fifty years imprisonment.  The Fourteenth Court of Appeals of Texas affirmed the conviction in an

unpublished opinion, *Dunn v. State*, No. 14-12-00110-CR, 2013 WL 3770917 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review.

Petitioner's first application for state habeas relief, challenging the conviction and sentence, was denied without a written order by the Texas Court of Criminal Appeals. Petitioner's second application for state habeas relief, which challenged the state habeas proceeding itself, was likewise denied without a written order by the court of criminal appeals.

Petitioner raises the following grounds for relief in the instant federal habeas petition:

1.    Trial counsel was ineffective at the guilt-innocence phase of trial in

    a.    not allowing petitioner to testify;

    b.    failing to obtain an expert witness;

    c.    failing to inform the court of petitioner's hearing impairment;

    d.    failing to challenge the complainant's incompetency; and

    e.    committing multiple errors throughout trial.

2.    Trial counsel was ineffective at the punishment phase of trial in failing to present mitigation evidence or a sexual offense "mitigation expert."

3.    Appellate counsel was ineffective.

Respondent argues that these claims have no merit.

### *Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its

opinion on appeal:

> On the evening of November 30, 2008, complainant Maggie was living at a group home for people with special needs. She had been dually diagnosed with mental retardation and bipolar disorder. Dunn's girlfriend, Stephanie Lundy, worked as a caretaker at the home.
>
> Shortly after 7:00 o'clock that evening, Sheila Swircynski, Maggie's foster sister, received a call from an attendant at the home who said Maggie wanted to talk to her. Swircynski could hear Maggie screaming and crying in the background, and when Maggie got on the phone, she said that "he hurt her private part and that he put his hand over her mouth." Carolyn Sims, a manager of the group home, took Maggie to Southeast Memorial Hospital for a sexual-assault examination. The lab results from the exam revealed Dunn's DNA on Maggie's underwear as well as on vaginal and perianal swabs taken during the exam. When confronted with this evidence, Dunn admitted that he had sex with Maggie on November 30 but claimed that it was consensual.
>
> At trial, the State attempted to show that Maggie was incapable of consenting, and several witnesses testified about the nature and degree of Maggie's bipolar disorder and mental retardation. The court's charge instructed the jury that a sexual assault is without the consent of the complainant if the defendant "knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." *See* TEX. PENAL CODE § 22.011(b)(4). The jury found Dunn guilty of the charged offense, and the trial court assessed his punishment at fifty years' imprisonment in the Texas Department of Criminal Justice, Institutional Division.

*Dunn*, 2013 WL 3770917 at *1 (footnote omitted).

On direct appeal, petitioner argued that he received ineffective assistance of trial and

appellate counsel. The state court rejected the claims and affirmed the conviction.

### *The Applicable Legal  Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U .S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable,  this Court considers whether the application was objectively unreasonable.  *Id*. at 411.  "It bears repeating that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Richter*, 562 U.S. at 102.  As stated by the Supreme Court

in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues.  Under

28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a

factual determination will not be overturned on factual grounds unless it is objectively

unreasonable in light of the evidence presented in the state court proceeding.  *Miller–El v.*

*Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying

factual determination of the state court to be correct, unless the petitioner rebuts the

presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see*

*also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether

the pleadings, discovery materials, and the summary judgment evidence show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported

motion for summary judgment, the burden shifts to the nonmovant to show with significant

probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue*

*Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding,

the rules only apply to the extent that they do not conflict with the federal rules governing

habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's

findings are to be presumed correct, overrides the summary judgment rule that all disputed

facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless

a petitioner can rebut the presumption of correctness of a state court's factual findings by

clear and convincing evidence, the state court's findings must be accepted as correct by the

federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on*

*other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal

habeas corpus petitioner's claim that he was denied effective assistance of counsel is

measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To

assert a successful ineffectiveness claim, a petitioner must establish both constitutionally

deficient performance by counsel and actual prejudice as a result of counsel's deficient

performance. *Id*. at 687. The failure to demonstrate deficient performance or prejudice is fatal to a *Strickland* claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

7

The Supreme Court recently emphasized in *Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's limitations:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (internal quotation omitted).

*During Guilt-Innocence Phase of Trial*

Petitioner claims that trial counsel was ineffective in the following particulars during the guilt-innocence phase of trial.

<u>Denial of right to testify</u>

Petitioner claims that he expressed his desire to testify in his own behalf, but that trial counsel told the court that petitioner would not be testifying.

In her affidavit submitted to the trial court on collateral review, trial counsel responded to petitioner's claim as follows:

> [Petitioner] was well aware of his right to testify at his trial. This right was discussed with him during my jail visits with [him] and during the court appearances. [Petitioner] made the decision to have the jury trial and he made the decision not to testify. [Petitioner] was informed that he would be cross

examined by the prosecutor if he decided to testify.  He still chose not to testify.

[Petitioner] had always stated that his having sexual intercourse with the Complainant was consensual.  He stated that the Complainant was trying to "go with him."  He informed me that he and Complainant "started kissing and one thing led to another."  He was also aware of the fact that if he did testify in the first phase of his trial, the jury would become aware of the fact that he had prior felonies.  [Petitioner] made the decision not to testify.  I do not know how to actually prevent a defendant from testifying if they so desire.  [Petitioner] was full[y] explained the consequences of testifying and that it was his right to testify if he so desired. [He] chose not to testify after many discussions on the matter.  His decision not to testify was definitely knowingly and voluntarily made.

*Ex parte Dunn*, pp. 145–46.

In rejecting petitioner's claim that trial counsel denied him his right to testify, the trial court made the following relevant findings of fact on collateral review:

5.      [Trial counsel] provided an affidavit summarizing her representation of the applicant.

6.      The affidavit of [trial counsel] is credible and the facts asserted therein are true.

7.      The Court finds, based on the affidavit of [trial counsel], that the applicant was aware of his right to testify at his trial.

8.      The Court finds, based on the affidavit of [trial counsel], that [trial counsel] discussed the applicant's right to testify with the applicant during jail visits and court appearances.

9.      The Court finds, based on the affidavit of [trial counsel], that [trial counsel] informed the applicant he would be cross-examined by the prosecutor if he chose to testify.

10.    The Court finds, based on the affidavit of [trial counsel], that the applicant was aware that if he testified in the first phase of his trial, the jury would learn of his prior felonies.

11.    The Court finds, based on the affidavit of [trial counsel], that [trial counsel] fully explained the consequences of testifying.

12.    The Court finds, based on the affidavit of [trial counsel], that the applicant made the decision to not testify.

13.    The Court finds, based on the affidavit of [trial counsel], that the applicant made the decision not to testify knowingly and voluntarily.

14.    Trial counsel did not deny the applicant his right to testify.

*Ex parte Dunn*, pp. 136–37.  The trial court also made the following relevant conclusions of law:

1.    The applicant fails to prove by a preponderance of the evidence that trial counsel's conduct fell below the objective standard of professional norms.

2.    The applicant fails to show that trial counsel's performance prejudiced his defense.

3.    The applicant fails to show a reasonable probability that the trial outcome would have been different had he testified.

*Id*., p. 140 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Id*., at cover.

A criminal defendant has a constitutional right to testify on his own behalf.  *Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987).  That right, of course, can be voluntarily and knowingly waived.  *Id*.  In context of a S*trickland* claim, the decision whether to put a defendant on the stand is a judgment call that cannot be easily condemned with the benefit

of hindsight. *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002). However, it is equally beyond dispute that it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify, even if contrary to counsel's professional advice. *Id.*

Petitioner claims here that he wanted to testify, but that trial counsel refused to allow it. The state trial court rejected petitioner's claim and instead found credible counsel's affidavit testimony that petitioner himself made the decision not to testify. In presenting to this Court nothing more than his bald disagreement with that finding, petitioner fails to meet his burden of proof under AEDPA. This holds particularly true in light of petitioner's failure to respond to the motion for summary judgment.

The state court rejected petitioner's claim that trial counsel denied him his right to testify during the guilt-innocence phase of trial. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to obtain expert witness</u>

Petitioner next claims that trial counsel was ineffective in failing to obtain and present an expert witness to rebut evidence that complainant's mental condition prevented her from consenting to sexual relations with petitioner. It had been petitioner's defense at trial that

11

the sexual encounter with complainant was consensual; the State, on the other hand, showed

that complainant's mental deficiency precluded her ability to give consent.

In responding to petitioner's claim on collateral review, trial counsel testified in her

affidavit as follows:

> I did not hire an expert concerning Complainant's mental condition due to the
> fact that I was provided medical records on Complainant which explained her
> condition in detail.  She was also residing in a home for the mentally
> challenged when she was sexually assaulted by [petitioner]. [Petitioner's] wife
> was an employee at the facility.  The home was owned by Carolyn Sims and
> [petitioner] had been to the home on prior occasions.  After considering the
> medical records of the Complainant and interviews of witnesses, it was my
> opinion that getting another expert to testify concerning Complainant's
> competency would add fuel to the fire.  It certainly would not help [petitioner]
> for another doctor to testify that he sexually assaulted a female who was so
> incompetent she was wearing a diaper when he sexually assaulted her.  It
> would not have helped if one more doctor stated that Complainant had the
> mind of a child. [Petitioner] also stated in his interview with the police that
> Complainant had the "mind of a minor and was slow." [Petitioner's] wife,
> Stephanie, worked at the home and [petitioner] knew exactly what type of
> individuals lived in the home.  He had gone to the home on the day that he
> sexually assaulted the Complainant to take his wife some food.  Stephanie
> stated that her husband, [petitioner], went upstairs and had sex with
> Complainant while she was downstairs working.  As a result of [petitioner's]
> actions, Stephanie lost her job.

*Ex parte Dunn*, pp. 146–47.

In rejecting petitioner's claim that trial counsel should have obtained an expert

witness, the trial court made the following relevant findings of fact on collateral review:

15.   The applicant does not name an expert that was available to testify at
      trial.

16.   The applicant does not name an expert whose opinion would benefit the
      defense.

17.   The Court finds, based on the affidavit of [trial counsel], that [trial counsel] received copies of the complainant's medical records which explained the complainant's condition in detail.

18.   The Court finds, based on the affidavit of [trial counsel], that [trial counsel] believed another expert would testify the complainant was incompetent.

19.   The Court finds, based on the affidavit of [trial counsel], that [trial counsel] believed another expert would testify that the complainant had the mind of a child.

20.   The Court finds, based on the affidavit of [trial counsel], that [trial counsel's] decision to not hire a mental health expert was based on trial strategy.

*Ex parte Dunn*, p. 137.  The trial court also made the following relevant conclusion of law:

4.   The applicant fails to show trial counsel was ineffective for failing to call an expert witness because the applicant fails to show that the witness was available or that their testimony would have benefited the defense.

*Id.*, p. 140 (citation omitted).  The Texas Court of Criminal Appeals relied on these findings

of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

Further, petitioner raised this issue on direct appeal.  In overruling petitioner's issue,

the intermediate appellate court held as follows:

To support a claim of ineffective assistance for failure to investigate, an appellant must show that he had a viable defense that his attorney failed to discover.  Further, trial counsel's failure to call a witness at the guilt-innocence stage is irrelevant absent a showing that the witness was available and the appellant would have benefitted from the witness's testimony.  In this case, Dunn does not identify a viable defense that his attorney failed to discover because she did not consult with a forensic expert.  Nor does he identify an expert who was available to testify and whose testimony would have benefitted

13

his defense.  Accordingly, Dunn has failed to show that counsel was deficient
for failing to consult with or call a forensic expert.

*Dunn*, at \*4 (citations omitted).

The Fifth Circuit Court of Appeals has repeatedly held that complaints of uncalled

witnesses are not favored in federal habeas review because the presentation of testimonial

evidence is a matter of trial strategy and because allegations of what a witness would have

stated are largely speculative.  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  To

prevail on an ineffective assistance claim based on counsel's failure to call a witness, a

petitioner must name the witness, demonstrate that the witness was available to testify and

would have done so, set out the content of the witness's proposed testimony, and show that

the testimony would have been favorable to a particular defense. *Id*.  This holds for claims

regarding uncalled lay and expert witnesses alike.  *Id*.; *see also Evans v. Cockrell*, 285 F.3d

370, 377–78 (5th Cir. 2002) (rejecting uncalled expert witness claim where petitioner failed

to present evidence of what a scientific expert would have stated).

Petitioner meets none of these requirements.  He wholly fails to establish that an

expert witness was available to testify for the defense and that the witness would have

testified in the manner claimed by petitioner.  Nor does petitioner show that, but for counsel's

failure to obtain such expert witness, there is a reasonable probability that the result of the

trial would have been different.  Petitioner establishes neither deficient performance nor

actual prejudice under *Strickland*.

The state court rejected petitioner's claim that trial counsel was ineffective in failing to obtain an expert witness. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Inability to hear the proceedings</u>

Petitioner claims that he informed trial counsel that he had a hearing impairment and could not hear all of the proceedings, but that counsel did nothing. In responding to this allegation, trial counsel testified in her affidavit on collateral review that, "Mr. Dunn did not inform me that he was unable to hear the witnesses during the trial." *Ex parte Dunn*, p. 147.

In rejecting petitioner's claim on collateral review, the trial court made the following relevant findings of fact:

21.   The Court finds the applicant's assertion that he informed trial counsel that he had a hearing disability and was not able to follow the proceeding is not credible.

22.   The Court finds, based on the affidavit of [trial counsel], that the applicant did not inform [trial counsel] that he was unable to hear the witnesses during trial.

*Id.*, p. 137. The trial court also made the following relevant conclusion of law:

5.   The Court finds the applicant's assertion that he was unable to hear the witnesses during trial is not credible.

6.   Trial counsel did not render ineffective assistance of counsel for failing to request an interpreter for the applicant because the applicant did not notify trial counsel that he was unable to hear during trial.

15

*Id.*, p. 140 (citation omitted). The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

The record shows that he state trial court did not believe petitioner's allegations that he had not been able to hear the witnesses or that he had told trial counsel he had a hearing impairment. To the contrary, the trial court accepted and found credible trial counsel's statement that petitioner never mentioned these issues to her. Petitioner's disagreement with the trial court's findings, supported with nothing more than his conclusory assertions, is insufficient to meet his burden of proof under AEDPA.

The state court rejected petitioner's claim that trial counsel should have informed the trial court that petitioner was hearing impaired. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to challenge complainant's incompetency</u>

Petitioner argues that trial counsel was ineffective in not objecting to or otherwise challenging the State's evidence, and the trial court's ruling, that complainant was incompetent to testify.

In responding to petitioner's claim on state collateral review, trial counsel submitted an affidavit in which she testified as follows:

> There was a hearing on January 31, 2012, before Judge Marc Brown to determine whether Complainant was competent to testify. The Judge's ruling

16

after the hearing was that Complainant was not competent to testify at trial. I did not object because it was extremely obvious that Complainant had the mentality of a very young child based upon her answers during the hearing. It would have been extremely obvious to the jury Complainant could not have consented to have sex with Mr. Dunn or anyone else. Permitting Complainant to testify would have been in essence asking for a life sentence for Mr. Dunn.

*Ex parte Dunn*, p. 147.

In rejecting petitioner's claim against trial counsel, the trial court made the following relevant findings of fact on collateral review:

23.     The Court finds, based on the court reporter's record, that the trial court found the complainant not competent to testify.

24.     The complainant's inability to distinguish between a truth and a lie was supported by the record.

25.     The Court finds, based on the affidavit of [trial counsel], that [trial counsel] did not object to the trial court's ruling declaring the complainant not competent to testify because it was obvious the complainant had the mentality of a young child based upon her answers during the competency hearing.

26.     The Court finds, based on the affidavit of [trial counsel], that [trial counsel] believed that if the complainant testified, it would have been obvious to the jury that she could not have consented to sexual intercourse with the applicant.

27.     The Court finds, based on the affidavit of [trial counsel], that [trial counsel's] decision to not object to the trial court's ruling declaring the complainant incompetent to testify was based on trial strategy.

*Ex parte Dunn*, pp. 137–38 (record citations omitted).  The trial court also made the following relevant conclusions of law:

7.     The determination of a witness's competency to testify is generally left to the trial court and will not be disturbed absent an abuse of discretion.

17

8.   A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding principles.

9.   The trial court did not abuse its discretion in finding the complainant not competent to testify.

10.  The applicant fails to show trial counsel was ineffective for failing to object to the trial court's ruling that the complainant was not competent to testify because the applicant fails to show the trial court would have committed error in overruling the objection.

*Id.*, pp. 140–41 (citations omitted).

The trial court expressly found complainant incompetent to testify, and petitioner fails to show that, had counsel objected to that finding, it would have constituted reversible error for the court to overrule the objection. Counsel is not required to file frivolous motions or make frivolous objections. *Green v. Johnson*, 160 F.3d 1029, 1036–37 (5th Cir. 1998); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990). It is well settled that failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness. *Green*, 160 F.3d at 1037.

Nor does petitioner rebut the strong presumption that trial counsel's actions were the result of reasonable trial strategy. Petitioner baldly asserts that counsel should have challenged the State's evidence and objected to the trial court's ruling finding complainant incompetent. His conclusory allegations are insufficient to meet his burden of proof under either *Strickland* or the AEDPA standard of review, and habeas relief is unwarranted.

The state court rejected petitioner's claim that trial counsel was ineffective in failing to challenge complainant's incompetency. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Multiple errors throughout trial</u>

Petitioner sets forth the following litany of complaints against trial counsel in his federal habeas petition, without stating any separate arguments or setting forth relevant citations to the record:

a.   failed to preserve error by failing to ask the jury to disregard and move for mistrial;

b.   failed to renew objections when the State asked the same improper question eliciting the same inadmissible answer;

c.   failed to timely object throughout the proceeding;

d.   bolstered the State's case during cross-examination;

e.   bolstered the State's case and conceded petitioner's guilt during closing argument;

f.   failed to object to prejudicial comments on the weight of the evidence by the trial court during voir dire;

g.   failed to object to comments on petitioner's failure to testify and present a defense during the State's closing argument;

h.   failed to object to the State's comments regarding the defense theory during closing argument;

i.      failed to object to highly prejudicial comments made by the complainant during the State's closing argument;

j.      failed to object to hearing during trial; and

k.      failed to warn him of the risks and dangers of rejecting the State's plea bargain offer and to proceed to trial.

In rejecting these issues on direct appeal, the intermediate state court of appeals held

as follows:

In his first issue, Dunn claims that his trial counsel was ineffective during voir dire because she failed to object when the trial judge commented on the weight of the evidence and when the prosecutor subsequently echoed the remark. A trial court must refrain from making any remark calculated to convey to the jury its opinion of the case. The trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case.

Here, Dunn argues the trial court commented on the weight of the evidence by stating, "The State of Texas has accused Mr. Dunn of the criminal offense of sexual assault. Big groan." But the judge went on to say, "If I were to ask for a show of hands how many people are against sexual assault all 65 of you would raise your hand. It's a natural response. But understand this: It is merely an accusation brought by the State of Texas." This was not a comment on the weight of the evidence but rather an effort by the court ensure that Dunn was not unfairly prejudiced by the jurors' negative feelings about the nature of the charged offense.

Additionally, the judge's comment did not relate to the specific incident for which Dunn was charged but rather to the offense of sexual assault generally. Therefore, Dunn has failed to demonstrate that his counsel was deficient for failing to object to the trial court's remark because it was not a comment on the weight of the evidence.

Dunn also argues that his counsel was deficient for failing to object when the prosecutor later stated, "the Judge has told you we're here today on a sexual assault case. Grumble, moan." The prosecutor continued, "Nobody really

wants to know that that occurs much less have to participate in a process to determine whether or not the offense occurred and what to do about it.  So I'm going to go through the law with you and explain to you what I have to prove." Dunn's challenge to these remarks, however, is based on the law prohibiting trial courts from commenting on the weight of the evidence, which does not extend to prosecutors.  And further, even if it did, the prosecutor's "Grumble, moan" remark was not a comment on the weight of the evidence; although we do not endorse his choice of words, the prosecutor was merely acknowledging the jury's natural aversion to sexual assault and did not refer to the specific facts of this case.

Because Dunn has failed to show that the comments made by the court and by the prosecutor were objectionable on that basis, he has also failed to demonstrate that counsel was deficient for failing to object.  Accordingly, we overrule his first issue to the extent it relates to counsel's representation during voir dire.

Also within his first issue, Dunn argues that his counsel was ineffective during the guilt-innocence phase because she (1) failed to object to inadmissible testimony . . . (3) asked questions and elicited responses that bolstered the State's case, (4) conceded Dunn's guilt during her closing argument, (5) failed to object when Maggie made a prejudicial "outburst" during counsel's closing argument, and (6) failed to object to the "highly prejudicial" comments the prosecutor made during the State's closing argument.  We address each complaint in turn.

We begin with Dunn's argument that his counsel repeatedly failed to object to inadmissible hearsay testimony during trial. When a defendant asserting an ineffective-assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show that the evidence was inadmissible.  Here, Dunn claims that several witnesses' testimony was inadmissible hearsay . . . but he fails to demonstrate that the challenged testimony was, in fact, inadmissible.   For example, he refers to Sims's testimony that "[t]he incident I was looking into was the alleged rape [Maggie]," and Swircynski's testimony that Maggie had been diagnosed with "[a] behavior disorder and also bipolar."  Yet neither witness mentioned an out-of-court statement in this testimony.  Dunn further argues counsel should have objected when Betts testified that Maggie calls herself by different names and sometimes says she is 13 years old.  Those out-of-court statements,

however, were offered to illustrate Maggie's mental capacity, not to prove the truth of the matter asserted.

Dunn also argues that the investigating officer offered "backdoor" hearsay when he testified about being assigned to Maggie's complaint, beginning his investigation, and developing a suspect. Although Dunn cites cases regarding backdoor hearsay, he offers no discussion to support his conclusory assertions that those cases apply here. Moreover, even if Dunn were correct about the admissibility of the evidence, the record is silent as to why counsel did not object, and there may have been strategic reasons for counsel to choose not to object even to inadmissible evidence.

Dunn next argues that Swircynski's testimony was inadmissible hearsay when she described what Maggie said to her on the phone shortly after the offense. The record shows that counsel did object to the first portion of the challenged testimony, the prosecutor argued it was admissible under the excited-utterance exception, and the trial court sustained the objection, advising the prosecutor to "prove it up more" if she was offering the testimony as an excited utterance. Swircynski then testified that Maggie had been screaming, crying, and in an excited state at that time she made the statements. Dunn's counsel then requested permission to approach the bench and challenged whether the prosecutor had offered a sufficient foundation to rely on the excited-utterance exception, but was overruled. On appeal, Dunn does not show that the testimony was not an excited utterance, and he has failed to show that the testimony was inadmissible.

Finally, Dunn argues Swircynski's testimony about Lundy confirming that Dunn had been at the home on the night of the offense was inadmissible hearsay. But assuming without deciding that this testimony was inadmissible, it was clearly not prejudicial because by arguing Maggie consented, Dunn necessarily admitted that he was in the home on the evening of the offense.

Accordingly, because Dunn has not shown that any of the challenged testimony was inadmissible and prejudicial, he has not proven that counsel was deficient for failing to object. [FN. In a separate but related subsection of his brief, Dunn argues his counsel was deficient for failing at various times to "ask the jury to disregard and move for a mistrial," to renew objections, and to timely object. To support these arguments, he offers a "sampling" of counsel's alleged errors, which is no more than two footnotes citing a combined 32 pages of the reporter's record. This presentation fails to satisfy Rule 33.1(i)

22

of the Rules of Appellate Procedure, which requires an appellant's brief to "contain a clear and concise argument for the contentions made." And even if the issue were adequately briefed, we still could not conclude that the matters raised would be sufficient to overcome the strong presumption that counsel's conduct was reasonable.]

\*   \*   \*   \*

Dunn also argues that during several cross-examinations, his trial counsel asked questions and elicited testimony that bolstered the State's case.

"Cross-examination is inherently risky, particularly in criminal cases where pre-trial discovery is more limited than in civil cases." It is an art, not a science, and it cannot be adequately judged in hindsight. In this direct appeal, we have no record from which to accurately discern counsel's trial strategy. Moreover, the record suggests that each strategic decision Dunn challenges had a reasonable justification.

First, Dunn argues that during cross-examination of four witnesses, counsel strengthened the State's argument that Maggie was incapable of consenting to sex. But the challenged questions to Swircynski and Betts appear to be an attempt to show that Maggie had "normal days" when she could have consented. Dunn further argues that counsel bolstered the State's case by asking Maggie's psychologist whether he was the doctor who diagnosed Maggie with mental retardation and bipolar disorder. In doing so, counsel was trying to call into question the witness's familiarity with Maggie and thereby undermine his credibility. Similarly, an allegedly unreasonable question to Kenneth Wahl, one of the investigating officers, was an effort to undermine Wahl's credibility by casting doubt on his qualifications to interview people with mental illnesses, diseases, or defects as those terms are used in the statute. Dunn also claims counsel bolstered the State's case because her cross-examination of two witnesses emphasized the DNA evidence linking Dunn to the offense. But the presence of DNA evidence was irrelevant to whether Maggie was capable of consenting to sexual intercourse, which was the central issue at trial. Therefore, assuming without deciding that Dunn's characterization of counsel's cross-examinations is correct, the alleged errors were not prejudicial.

Dunn's final argument with respect to the guilt-innocence phase is that counsel was deficient during closing arguments. First, Dunn argues his counsel

conceded Dunn's guilt during her closing argument by acknowledging that "the nurse stated, that the sexual assault occurred the morning of November the 30th," that Maggie "has some type of mental disease," and that Maggie "called herself different names."   But these remarks were in the context of counsel's attempt to underscore the evidence that "on some days [Maggie] is as normal as can be."   In doing so, counsel recognized the testimony regarding Maggie's "bad days" to then emphasize the fact that "[t]here was no testimony from anybody as to what her day was like on that particular day, November the 30th, 2008."   As Dunn's counsel continued with her closing argument, Maggie stated aloud, "I know he did it."   Dunn argues counsel should have objected and requested an instruction for the jury to disregard the remark, but he again fails to demonstrate that the failure to do so was unreasonable, let alone outrageous.   The record is silent as to counsel's strategy for ignoring the comment, and she may have reasonably decided that doing so was better than interrupting her closing argument only to draw more attention to Maggie's statement.

With respect to the prosecutor's closing argument, Dunn argues his counsel should have objected when the prosecutor commented on Dunn's failure to testify by stating, "Every single person who could speak for [Maggie] came into this courtroom and sat in the witness stand and did so."   But Dunn does not explain, and we do not see, how the challenged comment related to his decision not to testify.

Lastly, Dunn argues his counsel should have objected when the prosecutor said, "To believe Robert Dunn did not know on November 30th, 2008, that [Maggie] could not consent to sex with him, to believe that is to believe that this letter equals consent.   It's outrageous."   The letter to which the prosecutor referred was a letter Maggie wrote Dunn, which Dunn offered to show that Maggie was attracted to him.   But as a response to the defense's argument that the sex was consensual, the statement was a permissible subject area for closing argument.   Additionally, Dunn cites two cases for the proposition that an argument is improper if it "attack[s] the lawful efforts of defense counsel" or "strikes at the defendant over the shoulders of defense counsel."   But he offers no explanation to suggest that either case applies to the prosecutor's comment in this case.

Accordingly, we conclude that Dunn has failed to demonstrate that his trial counsel's representation was deficient during the guilt-innocence phase of trial, and we overrule Dunn's issue.

24

*Dunn*, at *2–6 (citations, headings omitted).

In rejecting petitioner's miscellaneous claims of ineffective assistance of trial counsel, the state trial court made the following relevant findings of fact on collateral review:

33.  The Court finds, based on the affidavit of [trial counsel], that [trial counsel] discussed the State's offer of 30 years confinement with the applicant on more than one occasion.

34.  The Court finds, based on the affidavit of [trial counsel], that [trial counsel] discussed the State's offer of 30 years confinement with the applicant in writing.

35.  The Court finds, based on the affidavit of [trial counsel], that [trial counsel] did not inform the applicant she could get the State of [*sic*] offer 7 years confinement.

36.  The Court finds, based on the affidavit of [trial counsel], that [trial counsel] explained the risk of going to trial with the applicant.

37.  The Court finds, based on the affidavit of [trial counsel], that [trial counsel] explained the range of punishment to the applicant.

38.  The Court finds, based on the affidavit of [trial counsel], that the applicant made the decision to proceed to trial.

39.  The Court finds, based on the affidavit of [trial counsel], that the applicant was not forced to proceed to trial.

40.  The Court finds, based on the affidavit of [trial counsel], that the applicant was aware of the possible consequences of a trial.

41.  The Court finds, based on the affidavit of [trial counsel], that the applicant made the decision to proceed to trial knowingly and voluntarily.

42.  Trial counsel's representation of the applicant was effective.

*Ex parte Dunn*, p. 139.  The trial court also made the following relevant conclusions of law:

> 14.   The applicant fails to show trial counsel failed to convey the State's offer of 30 years confinement.
>
> 15.   The applicant fails to show trial counsel failed to advise him of the consequences of proceeding to trial.
>
> 16.   In all things, the applicant fails to show that trial counsel rendered ineffective assistance of counsel.

*Id.*, p. 141.  The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

In lieu of presenting arguments as to why these grounds merit habeas relief under the AEDPA standard of review, petitioner informs the Court that his arguments can be found in his state habeas proceedings.  It is not this Court's responsibility to scour the state court record to find petitioner's arguments for him.  Regardless, the state court rejected the arguments petitioner raised in his state habeas proceedings; petitioner's reliance on those very same arguments at this juncture does not meet his burden of proof under AEDPA.  This Court has carefully reviewed the state court findings and determinations on direct appeal and collateral review and finds that petitioner fails to show either deficient performance or actual prejudice under *Strickland*.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

26

*During Punishment Phase of Trial*

Petitioner claims that trial counsel was ineffective during the punishment phase of trial because she failed to present mitigating evidence or consult with a sexual offense "mitigation expert."

Petitioner raised this issue on direct appeal.  In overruling the issue, the intermediate state court of appeals held as follows:

> Finally, Dunn argues his counsel was ineffective during the punishment phase because she failed to present any mitigating evidence and her punishment case was limited to a three-sentence request that the trial court assess punishment at the lower end of the applicable statutory range.  Dunn does not show what, if any, mitigating evidence existed at the time.  He also asserts that "Harris County is home to a number of experts in the area of the treatment and rehabilitation of sex offenders" and contends that his counsel should have consulted with and called an expert witness "to determine if there were any factors present that might have constituted mitigating evidence."  But Dunn neither identifies an expert who was available to testify nor demonstrates that the expert's testimony would have benefitted him.  Dunn essentially argues that counsel should have introduced mitigating evidence that may not have existed and called an unidentified expert witness whose testimony may not have benefitted him.  Such unsupported argument does not overcome the presumption that counsel's representation was reasonable.  Moreover, defense counsel could have reasonably determined that the potential benefit of additional witnesses or evidence was outweighed by the risk of unfavorable counter-testimony.  Accordingly, we overrule Dunn's issue.

*Dunn*, at *6 (citations omitted).

Petitioner here again fails to meet his burden of showing ineffective assistance or that the state court improperly denied state habeas relief on this issue.  He presents no evidence of any mitigating evidence that was available to trial counsel at trial, and presents no information regarding a "mitigation expert," as required by *Day* and related cases.  *See Day*,

27

566 F.3d at 538 (holding that, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense). Petitioner's conclusory allegations of ineffectiveness are unsupported in the record and insufficient to meet his burden of proof under either AEDPA or *Strickland*, and habeas relief is unwarranted.

The state court rejected petitioner's claim that trial counsel was ineffective during the punishment phase of trial. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Ineffective Assistance of Appellate Counsel*

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v.*

28

*Jones*, 163 F.3d 285, 300 (5th Cir. 1998).  Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal.  *Evitts*, 469 U.S. at 394.  Nor will counsel be deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.  *Evitts*, 469 U.S. at 394.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.

Petitioner claims that appellate counsel was ineffective in failing to argue on appeal that trial counsel denied petitioner his right to testify at trial.  This Court has already rejected petitioner's underlying claim that trial counsel did not allow him to testify at trial. Consequently, petitioner does not, and cannot, establish that, but for appellate counsel's failure to raise this issue on appeal, there is a reasonable probability that petitioner's appeal would have been successful.  Petitioner establishes neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

The state court rejected petitioner's claim of ineffective assistance of appellate counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 16) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on October 26, 2015.

Gray H. Miller
United States District Judge